# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br> Plaintiff <br> vs. <br> Brican Blake <br> Defendant | Case no. 4:19-CR-00649-JAR-1 |

## MOTION TO SUPRESS FINGERPRINT EVIDENCE AND OBJECTION TO GOVERNMENTS MOTION TO COMPEL

COMES NOW, Brican Blake ("Defendant" or "Mr. Blake") who is proceeding in this cause in propia persona and pursuant to the 4 Amendment of the United States Constitution, Rule 41(b) of the Federal Rules of Criminal Procedure, 5 U.S.C. § 552a(b) and pursuant to Haines v. Kerner 404 U.S. 519, 520 (1972) (holding "pro se litigants to a lesser standard than those of [trained] attorneys") in support of the same Mr. Blake asserts the following grounds:

# STATEMENT OF RELEVANT FACTS

1.) Wrongful obtained fingerprints were taken from defendent in this cause in which Madison County jail and Detective Wenstrom violated the Fourth Amendment

2.) Defendent wasn't read his miranda rights until 8/9/2019.

3.) Illegaly obtained fingerprints performed on 6/13/2019.

4.) Defendant was unlawfully detained for this cause which resulted in the governments motion to compel.

5.) Defendent was violated when Officer Wenstrom and Madison County jail violated the privacy act. (5 U.S.C. §552a

# ARGUMENT

Defendant moves in opposition to the Assistant United States Attorney's motion to compel production of major case exemplars, and further moves to quash the evidence which is fruit from a poisonus tree. In support of this motion the Grand Jury has not issued a request for the defendants fingerprints. Since the start of this case Mr. Blake has expressed his desire to file an opposition to the Governments motion to compel due to the fact of lack of due diligence and probable cause. The issue boils down to a districts courts "inherent authority" to compel someone in these circumstances to give identification evidence, and that question is intermingled with the question of the constitutionality of the 4th Amendment. The defendant was not Mirandized (read his Miranda rights) until after Detective Joshua Wenstrom #DSN 60911 obtained the fingerprint exemplars from him. Thus asserting that at no time before the exemplars were taken was the defendant ever "warned that he had a right to refuse to provide fingerprint exemplars" nor was the defendant advised that he possessed any rights under the Fourth Amendment. While it is clear that the Government recognizes the Fifth and Sixth Amendment violations, the Assistant United States attorney either

misreads or flat out refuses to acknowledge the fact that the defendant also moves that his Fourth Amendment rights were violated. The Government relied on Schmerber v. California, 384 U.S. 757 86, S.Ct. 1826, 16 L.Ed. 2d 908 (1966), and United States v. Wade, 388 U.S. 218 87, S.Ct. 1926, 18 L.Ed. 2d 1149 (1967). Wade, a line up case, merely quoted the same distinctions made in Schmerber between "communications" and "real or physical evidence", which has no relevancy in the defendants claims. Defendant has maintained his Fourth Amendment claims and in doing so he points to Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed. 2d 797 (1968) which is a Fourth, rather than a Fifth or Sixth Amendment case. Bumper makes clear that "when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." This case points out that "this burden can not be discharged by showing no more than acquiescence to a claim of lawful authority"(391 U.S. at 548-549, 88 [S.C]t. at 1792). By facts given it cannot fairly be said [th]at best, the defendant did any more than acquiesce that Detective Wenstrom illegally [took] the defendants fingerprint exemplars when [he w]as being held in custody by state authorities

on a state charge. Detective Wenstrom contacted the Madison County Jail in Illinois to retrieve fingerprint exemplars to compare to latent prints without a search warrant. "Because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense." (See: Camera v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The primary judicial concern in all cases of this type is the imposition of effective sanctions implementing the Fourth Amendment guarantee against illegal arrest and detention. Neither the fact that the evidence obtained through such detention is itself trustworthy or the fact that equivalent evidence and conveniently be obtained in a wholly proper way militates against this overriding consideration. (See Bynum v. United States, 104 U.S. App. D.C. 368, 370, 262 F.2d 465, 467 (1958) "An in camera review of the edited material discloses that it clearly pertains to a third party, and not to plaintiff. The court finds that no interest is served by disclosure of this material to plaintiff, and indeed the constitutional protection against unwarranted invasions of privacy requires that the edited material not be disclosed to plaintiff without the consent of the third party to whom the information pertains. (See:

Voelkner v. Internal Revenue Service, 489 F.Supp 40 E.D. Mo (1980). "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record to those officers and employees of the agency which maintains the record who have a need for the record in performance of their duties". (See: Privacy Act 5 U.S.C. §552a (b). "After recieving an affidavit or other information a magistrate judge or if authorized by Rule 41(b), a judge of a state court of record must issue the warrant if there is probable cause to search for and seize a person or property". (See: Federal Criminal Procedure Rule 41 (d)(1). Meaning Detective Wenstrom did not operate under any procedure available to effectively perform his duties. Even so the agency involved ultimately violated defendants constitutional rights along with Detective Wenstrom and prejudiced the defendant in this cause. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969) explicitly rejects the argument that fingerprinting evidence was not subject to the proscriptions of the Fourth Amendment. Davis reiterated long established principles when it stated that regardless of how

relevant or trustworthy the seized evidence may be, the exclusionary rule fashioned as a sanction for violation of the Fourth Amendment was designed "to redress and deter over reaching governmental conduct prohibited by the Fourth Amendment" (see: 394 U.S. at 724, 89 S.Ct. at 1396), "to argue that the Fourth Amendment does not apply to the Investigatory Stage is fundamentally to misconceive the purposes of the the Fourth Amendmen (see: 394 U.S. at 726, 89 S.Ct. at 1397. Director J. Edgar Hoover explained it best by stating "one of the quickest ways for any law enforcement officer to bring public disrepute upon himself, his organization, and the entire profession, is to be found guilty of a violation of civil rights." Futhermore "Evidence obtained by state officers in violation of the Fourth Amendment is inadmissible if offered in a federal criminal trial". (see: Elkins V. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed. 2d 1669 (1960). "Participation of a federal agent in a joint operation with state officers must be considered as having the same effect as though the federal agent had engaged in the undertaking as exclusively his own". (see: Byars V. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; and Gambino v. United States 275 U.S. 310, 48 S. Ct. 137, 72 L.Ed. 293. Next the government will try to argue a consent issue which also fails.

"Consent must never be equated to nonresistance to police orders or suggestions." (see: Virgin Islands v. Berne (3rd Cir 1969) 412 F.2d 1055 at 1058)). Bumper v. North Carolina, 391 U.S. 543 at 548-549, 88 S.Ct 1788 1792, 20 L.Ed. 2d 797 explicity holds that the burden of establishing consent to justify the lawfulness of a search "can not be discharged by showing no more than aquiescence to a claim of lawful authority." Meaning the law enforcement officer illegaly obtained the evidence from the defendant with no probable cause to administer a warrant or even a motive. "Enforcement officials may not compel the production of physical evidence absent a showing of the reasonableness of the seizure. (see: Davis v. Missippi) The Fourth Amendment guarantees that all people shall be 'secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...' Any Fourth Amendment violation in the present setting must rest on a lawless governmental intrusion upon the privacy of 'persons'. The prosecutor's concept of Patane is clearly misinterpreted because Patane was mirandized and no violation occurred upon the seizure of the alleged weapon. The same is demonstrated with Dionisio because the Grand Jury subjected him or subpoenaed him to appear and gave an order for him to provide "Voice exemplars." Villalba-Alvarado is misinterpreted because voluntary statements was given which lead to his suppression of

derivative physical evidence to be denied, basically the explanation was given that without the voluntary statements the physical evidence (hidden panel storing narcotics and scale) would have eventually been discovered anyway. Flores-Sandoval is involved around a consensual encounter which doesn't implicate the Fourth Amendment, and Miranda protections only apply to custodial interrogations. Oregon v. Elstad the defendant waived his rights after being Mirandized and wrote a confession. Lovato has demonstrated a sample retrieved from a firearm defendant threw in an alley near the crime scene in which he voluntarily participated in a interview in which the defendant admitted to the essential facts of the alleged crime. Ultimately these cases have nothing to do with the defendants claims. A procedural Miranda violation differs exponentially when an oppressive detention was initiated. The defendant's claims expressively relates to his oppressive detainment which was extensive and unlawful, due to a Fourth Amendment violation in the acquisition of Mr. Blake's fingerprints which is a Fourth Amendment search. The violation of the Fourth Amendment is constitutional a warrants relief in various ways.

# CONCLUSION

A procedural Miranda violation differs in significant respects from violations of the Fourth Amendment, which have traditionally mandated a broad application of the "fruits" doctrine that requires exclusion as "fruit of the poisonous tree" of evidence discovered as a result of an unconstitutional search. The Fifth Amendment prohibits use by the prosecution in its case in chief only of compelled testimony, and failure to administer Miranda warnings creates a presumption of compulsion, requiring that unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment be excluded from evidence. Under the Fourth Amendment, law enforcement officials may not compel the production of physical evidence absent a showing of probable cause, or reasonableness of the seizure. The lawless dragnet detention is the Fourth Amendment violation along with the wrongfully obtained fingerprints. Investigatory seizures would subject unlimited numbers of innocent persons to the harrassment and ignominy incident to involuntary detention. The defendent's detention amounted to a deprivation of liberty without due process of law due to Officer Wenstrom's unprofessional practice in which the prosecutor misconstrues as a Fifth Amendment Violation. The case law presented in the prosecutor's motion to compel are not relevant nor are they of any merit. "The Fourth Amendment protects expectations of privacy that society is prepared to recognize as reasonable"

so that official intrusion generally qualifies as a search and requires a warrant supported by probable cause. The Fourth Amendment seeks to secure "the privacies of life" against "arbitrary power." (See: Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886) The central aim of the Framers was "to place obstacles in the way of a too permeating police surveillance." (See: United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The argument that the fingerprints were public or accessible has no merit due to the fact of the expectation of privacy. "What one seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (See Katz v. United States, 389 U.S. 347 at 351-352, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967). [illegible scribbled out text] The only reasonable argument is when exception applies, "the exigencies of the situation" make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. (See: Kentucky v. King, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed. 2d 865 (2011) (quoting Mincey v. Arizona, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed. 2d 290 (1978) "Such exigencies include the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm

or prevent the imminent destruction of evidence, 563 U.S., at 460, and n.3, 131 S.Ct. 1849. This only pertains to bomb threats, active shootings, and child abductions. Meaning while police must get a warrant when collecting finger prints to assist in the minerun criminal investigation, the rule set forth does not limit their ability to respond to an ongoing emergency. The founders of the Constitution understood the phrase "persons, houses, papers, and effects" to be an important measure of the Fourth Amendments overall scope. Meaning the access by Officer Wenstrom violated law which protects against access by the public without consent (see: Baude & Stern, The Positive Law Model of the Fourth Amendment, 129 Harv. L. Rev. 1821, 1825-1826 (2016).

This is a violation of multiple defendants rights and prejudices the defendant beyond reasonable mean and also violates due diligence.

WHEREFORE Based upon all of the foregoing facts and authorities and interests of justice, Mr. Blake respectfully urges this Honorable Court to GRANT this MOTION and a result in not doing so would violate the defendant's 4th, 5th, 8th and 14th Amendments of the United States Constitution. MOREOVER Mr. Blake asks this Court to grant any other relief for which he is and or may be entitled to as a matter of law.

Respectfully Submitted
Brian Blake
In Propia Persona
U.C.C. 1-308

x Brian Blake       8/13/20


witness  8/13/20

This motion was administered to Standby Counsel Joseph Hogan on this date to be filed on the same day. 8/13/20  Brian Blake