UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-CR-00649-JAR |
| | ) | |
| BRIRAN BLAKE, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The United States of America, by and through its Attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Jason S. Dunkel, Assistant United States Attorney for the said District, submits this Sentencing Memorandum and requests this Court impose a within-guideline sentence of no less than 480 months imprisonment for Defendant Briran Blake.

## INTRODUCTION

Defendant Briran Blake knows that if he makes victims fear for their lives, they will succumb to his intimidation and give him what he wants.  He has been convicted of robbery, aggravated robbery, aggravated battery, and—in this case—two counts of bank robbery and one count of brandishing a firearm in furtherance of a crime of violence.  Through these crimes of violence, plus his convictions for two counts of delivery of controlled substances within 500 feet of a school, Blake has merited treatment as a career offender and a guideline range of imprisonment of 360 months to life.  As detailed below, due to his criminal history and offense conduct in this case, a sentence at or near the low end of Defendant's guidelines would be insufficient to satisfy the Section 3553(a) factors.  The government requests the Court impose a sentence of no less than 480 months.

1

## STATEMENT OF FACTS

### I.    Defendant's Offense Conduct

Defendant was convicted by the jury of all counts.  The jury found beyond a reasonable doubt that Defendant robbed the Hampton Branch of Regions Bank on June 9, 2017, and the Broadway Branch of Regions Bank on June 22, 2017.  They also found he possessed and brandished a firearm in furtherance of the June 22, 2017, robbery.

Defendant walked into the Regions Bank at 3547 Hampton Avenue on June 9, 2017, produced a demand note, and robbed the bank ("Hampton Robbery").  Shortly after noon, he entered the bank wearing a St. Louis Cardinals beanie cap, fake dreadlocks, and sunglasses.  Tr. Ex. 7.  He slid a demand note to the teller, and then dropped his right hand to his side, next to his pants pocket.  *Id.*  The teller read the note, seeing that it demanded $15,000.  Tr. Ex. 8E and 9. She also read the threat contained in the note: "If you act historical [*sic*] you will be first to die[.] [T]hat's a promise."  *Id.*   Terrified, she complied with the demand and gave Defendant all the money in one of her teller drawers: $1,999.  Tr. Ex. 2 and 7.  Defendant took the money and ran from the bank, leaving behind the demand note. Tr. Ex. 7.

Just 13 days later, he walked into another Regions Bank, this time the branch located at 3803 South Broadway, and robbed it ("Broadway Robbery").  Similarly disguised in a Kansas City Chiefs baseball cap, fake dreadlocks, and sunglasses, he approached the teller and slid her a demand note partially in an envelope.  Tr. Ex. 11.  Just as with the Hampton Robbery, once he slid the note to the teller, he dropped his right hand to his pant pocket.  *Id.*  The teller read the note and saw it demanded she "empty the register."  Tr. Ex. 12E and 13.  She also read the threat contained in the note: "Trust me I have a Gun[.] [Y]ou will be first to die."  *Id.*

While the Broadway Robbery began the same way as the Hampton Robbery, there was one difference.  During the robbery, a bank customer came into the bank and stood in line behind

Defendant.  Tr. Ex. 11.  Defendant turned around, saw the customer, and in reaction to seeing the customer, pulled a firearm out of his right pant pocket.  *Id.*  He pointed the firearm at the teller, tapped it on the metal tray that passed under the bullet resistant glass, and then tried to point the firearm at the teller by brandishing it through the metal tray.  *Id.*  She testified that she was terrified: terrified that he would intentionally shoot her, terrified that he would accidentally shoot her while trying to brandish the gun through the tray, and terrified that he may intentionally shoot the customer or another bank employee if they were to interrupt the robbery.  She testified that she could clearly see the gun, see the aperture of the barrel, and see that it was a real gun.  She handed him $4,267 cash and he fled the building, leaving behind the demand note.  *Id.*; Tr. Ex. 4.

Proof of Defendant's guilt is overwhelming.  The *modus operandi* of the robberies and the video evidence—not only the robber's appearance but also his mannerisms and body movements—clearly show that the same individual was responsible for these two robberies. Between the demand note in the two robberies, the envelope bearing the demand note in the second robbery, and the teller tray in the second robbery, police identified Defendant as the source of 17 latent prints.  Tr. Ex. 26.  Finally, during trial the teller from the Broadway Robbery identified Defendant as the bank robber.

## II.    Defendant's Criminal History

Defendant has now been convicted of five crimes of violence and two drug distribution offenses, spanning nearly one decade of Defendant's life.

On August 23, 2008, Defendant was part of a multi-county crime spree in Illinois. Defendant and an accomplice robbed a person at gunpoint in St. Clair County, Illinois.  PSR, at ¶ 44.  They took the victim's wallet and then fled to Madison County, where Defendant and the same accomplice robbed two individuals at gunpoint.  *Id.*, ¶¶ 43, 44.   They punched one victim, knocking her to the ground, and stole her purse.  *Id.*, ¶ 43.  Defendant, his accomplice, and a third

person were arrested that day, and the victim identified Blake as the robber who possessed the firearm.[1]  *Id.*  Blake was sentenced to six years' imprisonment for the St. Clair County aggravated robbery conviction and three years' imprisonment for the Madison County robbery conviction. *Id.*, ¶¶ 43, 44.

In 2011, shortly after completing his sentences for the robbery cases and while on parole for a separate drug possession case, Defendant shot at a vehicle containing his son and his son's mother.  *Id.*, ¶ 47 (shooting); *id.*, ¶ 46 (on parole for cocaine possession offense).  During a custody exchange of his son, Defendant and the victim began arguing.  *Id.*, ¶ 47.  Defendant began threatening the victim's life and brandishing a firearm.  *Id.*  When he shot at the vehicle containing the victim and his son, his son's mother was shot in the arm.  *Id.*  He was sentenced to eight years' imprisonment and was released on parole in 2015.  *Id.*  He was on parole for this shooting at the time of the offense conduct in this case.

Just three months after the bank robberies in this case, Defendant was arrested after distributing cocaine twice within 500 feet of a school.  *Id.*, ¶¶ 49, 50.  He delivered cocaine to a confidential source twice in a four-day period.  *Id.*  His six-year sentence imposed in that case will expire in approximately two years.

Even if Defendant was not a career offender, his criminal history score of 15 would place him into the highest criminal history category: category VI.  *Id.,* ¶ 54.  Because of Defendant's three crimes of violence prior to the bank robberies in this case, Defendant is classified as a career offender.  *Id.*, ¶ 39; U.S.S.G. § 4B1.1.

---

[1] The police report noted that when Blake was arrested with his accomplice following the second robbery, the vehicle contained the victim's purse and a BB gun, but not a real firearm.

**LEGAL STANDARD**

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  The Court, in determining the particular sentence to be imposed, shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct; [and]
>> (C) to protect the public from further crimes of the defendant;
> * * *
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for … the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines … issued by the Sentencing Commission….
> * * *

18 U.S.C. § 3553(a).  As calculated by the United States Probation Office, Defendant's guideline range of imprisonment is 360 months to life.  PSR, ¶¶ 39, 82.

**ARGUMENT**

The Section 3553(a) factors do not warrant a downward variance in this case, and the Court should sentence Defendant to a within-guidelines sentence.  Under the Section 3553(a) factors, including the seriousness of Defendant's conduct, Defendant's prolific criminal history, Defendant's failure to be deterred by previous periods of incarceration, and Defendant's continued risk to the public upon his release, the Section 3553(a) factors require a sentence in excess of the 360-month threshold of the guideline range.  For these reasons, the government believes that a sentence of at least 480 months is required.

> I. **Defendant's criminal history is prolific—even by career offender standards— and Defendant should be sentenced to a term of imprisonment of no less than 480 months.**

Calling Defendant a mere career offender risks underreporting the seriousness of his criminal history.  Defendant now stands convicted of crimes of violence or drug distribution crimes arising out of seven separate criminal episodes: (1) the 2008 Madison County robbery, (2) the 2008 St. Clair County aggravated robbery, (3) the 2011 shooting of his son's mother, (4) the Hampton Robbery, (5) the Broadway Robbery, (6) the September 5, 2017, drug distribution and (7) the September 8, 2017, drug distribution.[2]

Defendant would be before this Court with the same guideline range of imprisonment had he only been convicted of one 2008 robbery and the 2011 shooting.  But the Section 3553(a) factors treat differently the hypothetical Blake with only those two convictions and the actual Blake before this Court with his very prolific criminal history.

Additionally, the career offender guidelines focus on the *prior* felony convictions—those convictions for conduct that occurred prior to Defendant's bank robberies.  For this reason, his drug distribution offenses are not listed as predicate convictions for his career offender status.  PSR, ¶¶ 39.  But the Section 3553(a) factors consider Defendant and his history and characteristics as Defendant appears before the Court for sentencing.  18 U.S.C. § 3553(a)(1).  The Court should take into account the fact that Defendant worked hard to earn his career offender status, and then

---

[2] While it is not immediately obvious from the name of the charge of conviction in Defendant's drug cases, his charge involved an element of distribution.  The Judgment entered in that case cites the offense statute of 720 Ill. Comp. Stat. 570/407(b)(2), which criminalizes the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance within 500 feet of a school.  *See* Exhibit 1, Amended Judgment, *People v. Brian Blake*, 17CF1162 (Cir. Ct. St. Clair Co. Ill. January 12, 2018); 720 Ill. Comp. Stat. 570/407(b)(2); PSR, ¶¶ 49-50.

went out and robbed two banks, and then went out and within just a few months was dealing drugs within 500 feet of a school. *Id.*

It should be pertinent to this Court that Defendant did not go out, rob two banks, and then settle down with the proceeds of that robbery. Instead, he was emboldened, especially because he was not immediately caught, and he continued his streak of criminal conduct that summer, culminating in the drug distribution arrest and conviction.

As a final factor to consider in Defendant's prolific criminal history, the Court should be troubled that this string of criminal conduct occurred while Defendant was on probation or parole for prior offenses. His robbery and aggravated robbery offenses from 2008 occurred while on probation from his juvenile domestic battery adjudication. PSR, ¶¶ 41, 43, 44. The 2011 shooting of his son's mother occurred while on parole for his first drug conviction. PSR, ¶¶ 46, 47. And the two bank robberies and his drug distributions occurred while on parole for the shooting conviction. PSR, ¶¶ 6, 9, 47, 49, 50. This is part of Defendant's character. 18 U.S.C. § 3553(a)(1). Defendant knows he is under heightened supervision, and he nonetheless engages in serious criminal behavior. Defendant knows that future misconduct will trigger revocations of his parole, and he nonetheless engages in serious criminal behavior. Defendant is given resources and opportunities to right his life, and he nonetheless engages in serious criminal behavior.

Defendant can no longer rely on his youth as the reason for his criminal behavior. That time has come and gone. This prolific criminal history reveals Defendant's character. 18 U.S.C. § 3553(a)(1). It reveals his character for violence. It reveals his character for shoving a gun into victims faces in order to get his way. PSR, ¶¶ 9, 43, 44, 47. It reveals his character for then using that gun and shooting his victims when brandishing it does not force his victims to comply. PSR, ¶ 47.

Defendant should not be sentenced as a mere career offender who may deserve a 360-month sentence.  Defendant's sentence should recognize the prolific criminal history he has worked his whole life to compile.  Defendant should be sentenced to no less than 480 months' imprisonment.

II.    **Because Defendant is a career offender, his guideline range of imprisonment is solely determined by the Broadway Robbery, and therefore he should be sentenced to a term of imprisonment no less than 480 months in order to recognize the harm caused in the Hampton Robbery and to deter career offenders from engaging in crime sprees.**

As a career offender, Defendant's guideline range of imprisonment is based on a single count of conviction: Count Three arising out of the Broadway Robbery.  Defendant's guideline range would be the same regardless of whether he committed the Hampton Robbery.  To properly recognize the full scope of Defendant's harm to society, to reflect the seriousness of the Hampton Robbery and provide just punishment, and to adequately deter career offenders who engage in strings of criminal conduct, Defendant should receive a sentence in excess of 480 months.

Defendant's guideline range of imprisonment is governed by Section 4B1.1(c)(3), which sets out a "360 month to life" guideline because Defendant was convicted in Count Three of an offense of 18 U.S.C. § 924(c).  U.S.S.G. § 4B1.1(c)(3); PSR ¶¶ 39, 82.  His guideline range is therefore predicated solely on the offense conduct of committing the Broadway Robbery and brandishing a firearm in furtherance of that robbery.  By calculating a guideline range in this manner, the guidelines fail to capture the full scope of damage Defendant caused.

The jury heard Victim N.N. testify how Defendant came into her bank, robbed her of money, and threatened to kill her if she set off the alarm.  Victim N.N. testified how angry she was that someone would come into the bank and put her into that position, to rob her, and victimize her while she was just working her job.  The Defendant even called to the stand Detective Wenstrom, and Defendant elicited from him much of the same testimony, and the jury heard

Detective Wenstrom recorded that Victim N.N. was "terrified and physically upset from her interaction with" Defendant.

But this harm to Victim N.N., and the harm to Regions Bank and people of this District generally, is not taken into account in Defendant's guideline range of imprisonment, which is solely predicated on the Broadway Robbery.

Indeed, as a career offender, Defendant could have robbed 15 banks that summer in this District and his guideline range of imprisonment would be the same.  The Government understands that this is a result of how the guidelines work, but this is the very reason that the Section 3553(a) factors go beyond what the guidelines consider.  This Court's sentence must consider the "the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).  These factors require that the Court's sentence take into account not only the Broadway Robbery but also the Hampton Robbery.  *Id.*  The Court should consider the deterrent effect of sentencing career offenders, and should sentence Defendant based on all his convicted conduct, not merely the most serious convicted conduct.   18 U.S.C. § 3553(a)(2)(B).

Had Defendant only committed the Broadway Robbery, the Government would believe a 360-month sentence could satisfy the Section 3553(a) factors.  But in light of both robberies committed by Defendant, such a sentence would be too low and would be a disservice to the victims of the Hampton Robbery and the public at large.  A sentence of no less than 480 months would properly satisfy the Section 3553(a) factors.  It would reflect the seriousness of the offense as a whole—the victimization of separate individuals during the Hampton Robbery and the Broadway Robbery—and would provide just punishment for these offenses and properly deter criminal conduct.

**III.    Defendant's criminal history demonstrates he will remain a danger to the community for as long as he can threaten victims with a weapon; therefore Defendant should be sentenced to at least 480 months to "protect the public from future crimes of" Defendant.**

The Court's sentence ought to reflect not just Defendant's past—his history and characteristics and the seriousness of Defendant's offense—but also his future and the need to protect the public from further crimes of the Defendant.  18 U.S.C. § 3553(a)(2)(C).  The Court can and should consider its role in incapacitating Defendant from future crimes.

Defendant's criminal history shows he is not deterred by conditions of supervision, he is not deterred by risk of reincarceration, and he is not rehabilitated by terms of incarceration. Furthermore, Defendant is before this Court as a 31-year-old man.  He cannot credibly blame the immaturity of youth for these offenses.  His criminal history shows how frequently he resorts to crimes of violence and it shows the damage he has caused to society.  Despite the strengths of the programs of the Bureau of Prisons, the Government is concerned that, when Defendant is eventually released, it will be a question of when—not if—he will harm someone again.   To reduce that risk, a sentence of no less than 480 months is necessary.  Even a sentence of 420 months—35 years—could result in Defendant's release from the Bureau of Prisons prior to his 60th birthday under current laws awarding good time credits.  A sentence of 480 months would ensure that Defendant remain incapacitated from committing additional offenses against the public at large until an age where his risk of reoffending is tolerable.  18 U.S.C. § 3553(a)(2)(C).

<u>CONCLUSION</u>

For the foregoing reasons, the Court should impose a sentence on Defendant of no less than 480 months in order to satisfy the Section 3553(a) factors, including recognition of Defendant's history and characteristics, reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence to criminal conduct, and

to protect the public from further crimes of Defendant.  To accomplish a 480-month sentence, the Government recommends the Court sentence Defendant as follows: a 240-month sentence as to Count One; a 240-month sentence as to Count Two, with 84 months running concurrent with Count One and 156 months running consecutive to Count One; a 84-month sentence as to Count Three, running consecutive to all other counts and sentences.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Jason S. Dunkel*
JASON DUNKEL, #65886(MO)
Assistant United States Attorney
111 South Tenth Street, 20th Floor
Saint Louis, Missouri 63102
Jason.Dunkel@usdoj.gov
Telephone: (314) 539-2200
Facsimile: (314) 539-3887

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

> Joseph M. Hogan
> Stand-by Counsel for Defendant

Furthermore, the foregoing was served by Federal Express to:

> Briran Blake
> Crawford County Jail
> 212 3rd Street
> Steelville, MO 65565

 /s/ Jason S. Dunkel
JASON S. DUNKEL, #65886(MO)
Assistant United States Attorney
